**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ASCOM HASLER MAILING SYSTEMS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 00-1401 (PLF/JMF) |
| UNITED STATES POSTAL SERVICE, | ) ) ) | |
| Defendant. | ) ) | |
| NEOPOST, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 00-2089 (PLF/JMF) |
| UNITED STATES POSTAL SERVICE | ) ) ) | |
| Defendant. | ) ) | |
| FRANCOTYP-POSTALIA, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 01-0804 (PLF/JMF) |
| UNITED STATES POSTAL SERVICE, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

These consolidated cases were referred to me for all pre-trial matters, including for the purpose of issuing reports and recommendations on any dispositive motions filed in these cases. Currently pending before me is the United States Postal Service's Motion

1

to Dismiss the Plaintiffs' complaints. For the reasons stated, I recommend dismissal of one count in Plaintiffs' complaint; as to all other counts, I recommend the motion to dismiss be denied.

**I.     Introduction**

Nearly every business in America probably has a postage meter, which stamps letters and packages with imprints equal to the cost of postage to indicate payment. In the 1960s, Pitney Bowes, who dominates the market for postage meters, invented and patented the Computerized Remote Meter Resetting System ("CMRS") that it marketed under the trade name "Postage by Phone." This system permits customers to use their phones to purchase more postage without having to take the meter to the nearest post office to have it reset.

Pitney Bowes urged the United States Postal Service ("the Postal Service") to permit the use of the new system and, in 1978, Pitney Bowes and the Postal Service executed a Statement of Understanding ("SOU") that gave Pitney Bowes the right to operate the new system. Plaintiffs are four of Pitney Bowes' competitors who were also authorized to use the new system. Pitney Bowes and Plaintiffs are collectively called "meter resetting companies."

Under the new system, customers advanced payments for postage. Their money went first to the meter resetting companies' lockbox banks and from there to the companies' trustee banks. The funds remained with the trustee banks until the customer actually used the postage it had purchased for the postage meter. At that point, the funds went from the appropriate trustee bank to the Postal Service. During the interval between receipt of the advance payment from the customer and the transmittal of those funds to

the Postal Service, the funds in the meter resetting companies' trustee accounts earned interest, which the meter resetting companies kept. It was hardly small change; the interest amounted to millions of dollars per year.

In 1995, the Postal Service promulgated new regulations[1] governing the meter resetting system. Under the new regulations, customers were to send their advance payments directly to the Postal Service for ultimate transmittal to the United States Treasury. As a result, the meter resetting companies could no longer collect the interest on their customers' advance deposits.[2]

## II.   Plaintiffs' Claims

In 1997, Pitney Bowes sued the Postal Service for relief from the new regulations. After surviving the Postal Service's motion for summary judgment, Pitney Bowes settled the case. Pitney Bowes' competitors, the plaintiffs in the case currently before the Court, claim that (1) they had contracts, expressed or implied in fact, which provided that they would continue to receive the interest on the trustee accounts and the Postal Service breached those contracts when it promulgated the 1995 regulations; (2) they relied to their detriment on the Postal Service's promise that they would be permitted to keep the interest ("promissory estoppel") and that they are now entitled to it; (3) they are entitled to the interest quantum meruit or to prevent the Postal Service's unjust enrichment; (4) they were third-party beneficiaries of the 1978 Statement of Understanding between Pitney Bowes and the Postal Service; (5) their continued entitlement to the interest was property taken from them without just compensation; and (6) in settling with Pitney

---

[1] The regulations are codified at 39 C.F.R. §§ 501.1-501.19 (2006).
[2] I have based this introductory statement upon the Introduction section of Judge Urbina's opinion in <u>Pitney Bowes, Inc. v. United States Postal Serv.</u>, 27 F. Supp. 2d 15, 17-18 (D.D.C. 1998).

Bowes but not Plaintiffs, the Postal Service breached its constitutional obligation to treat similarly situated parties equally.

The Postal Service has moved to dismiss all of these claims on the grounds that each fails to state a claim upon which relief can be granted. It also insists the Court lacks jurisdiction over the lawsuit.

For the reasons stated in this Report and Recommendation, I conclude that (1) this Court should exercise jurisdiction over all of the claims asserted; (2) as Judge Urbina concluded in the Pitney Bowes case, the contract and takings claims raise genuine issues of material fact precluding their denial at this point; (3) what I have called the quasi-contractual claims—promissory estoppel, quantum meruit and unjust enrichment—cannot be resolved at this point for there are also genuine issues of material fact that must be resolved before these claims can be finally adjudicated; (4) whether Pitney Bowes and its competitors were similarly situated when the Postal Service settled its case with Pitney Bowes also raises a question of fact precluding dismissal at this point; and (5) the plaintiffs' claim to be third-party beneficiaries of the SOU fails to state a claim upon which relief can be granted. I therefore recommend that the Postal Service's motion to dismiss should be granted only as to the third-party beneficiary claim premised on the SOU, but that otherwise the motion should be denied.

I turn first to the question of jurisdiction.

### III. Sovereign Immunity and Jurisdiction

The clause in the Postal Reorganization Act indicating that the Postal Service may "sue or be sued in its official name," 39 U.S.C. § 401(1),[3] is a capacious waiver of the sovereign immunity that the Postal Service could otherwise claim. Loeffler v. Frank, 486

---

[3] All references to the United States Code are to the electronic versions that appear in Westlaw or Lexis.

U.S. 549, 556 (1988); <u>Franchise Tax Bd. of Cal. v. United States Postal Serv.</u>, 467 U.S. 512, 517 (1984); <u>Licata v. United States Postal Serv.</u>, 33 F.3d 259, 262 (D.C. Cir. 1994). Thus, district courts may exercise jurisdiction over any type of claim for relief asserted against the Postal Service.

It is the law of this Circuit, however, that a claim asserted against an executive agency under a "sue or be sued" clause is subject to the Contract Disputes Act[4] and lies exclusively within the jurisdiction of the United States Court of Federal Claims ("the claims court"). <u>A&S Council Oil Co. v. Lader</u>, 56 F.3d 234, 241-42 (D.C. Cir. 1995); <u>Arbitraje Casa de Cambio v. United States Postal Serv.</u>, No. Civ. A. 02-0777, 2004 WL 3257073, at *1-2 (D.D.C. Nov. 30, 2004). The Postal Service argues that, in this case, exclusive jurisdiction lies in the claims court since Plaintiffs' claims are premised either on an express contract or one implied in fact and are therefore subject to the Contract Disputes Act.

But, the picture is more complicated than that. Plaintiffs' claims can be grouped into several distinct categories: (1) claims based on an express contract or one implied in fact; (2) claims based on "quasi contracts," i.e., the claims premised on theories of promissory estoppel, quantum meruit, and unjust enrichment; and (3) constitutional claims. The constitutional claims, in turn, must be further subdivided as (a) claims that Plaintiffs' property was taken without due compensation, and (b) claims that the Postal Service, in violation of the due process clause of the Fifth Amendment to the Constitution, discriminated among similarly situated parties, i.e., Pitney Bowes and Plaintiffs, when it settled Pitney Bowes's claims but not Plaintiffs' claims. While the claims court might or might not have exclusive jurisdiction over the express and implied

---

[4] 41 U.S.C. § 601 <u>et seq</u>.

contract claims, and certainly does have jurisdiction over the takings claim, it does not have any jurisdiction over the quasi contracts claim or the due process claim. Son Broad., Inc. v. United States, 42 Fed. Cl. 532, 535 (1998). See also Perri v. United States, 340 F.3d 1337, 1343-44 (Fed. Cir. 2003); LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995); Nematollahi v. United States, 38 Fed. Cl. 224, 235-36 (1997).

According to the Federal Circuit, the district court may transfer less than all of the claims for relief to the claims court, thereby retaining those claims over which it does have jurisdiction. United States v. County of Cook, Ill., 170 F.3d 1084, 1089 (Fed. Cir. 1999). But this poses a problem. Section 1500 of Title 28 of the United States Code[5] precludes the claims court's exercise of jurisdiction when the district court is exercising jurisdiction over a claim based on the same operative facts. Id. In this case, the claims premised on an express contract, a contract implied in fact, and a taking, although they might all belong in the claims court, would be in limbo pending this Court's resolution of the quasi contract and due process claims.

There is a solution, however, that flows from the court of appeals' recent decision in Rochon v. Gonzalez, 438 F.3d 1211, 1215 (D.C. Cir. 2006). In that case, the plaintiff asserted a statutory claim, premised on Title VII of the Civil Rights Act[6] that was within this court's jurisdiction, and a claim based on a contract, in the form of a settlement agreement with the United States, that might have been within the exclusive jurisdiction of the claims court. Id. The court of appeals indicated that, on remand, the district court

---

[5] 28 U.S.C. § 1500 provides: "The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States."

[6] 42 U.S.C. § 2000e-3(a).

could exercise ancillary jurisdiction over the contract claim incident to its resolution of the statutory claim. Id., citing Shaffer v. Veneman, 325 F.3d 370, 373 (D.C. Cir. 2003). I therefore recommend, in the same way, that the court exercise the jurisdiction it unquestionably has over the quasi contract and due process claims and exercise ancillary jurisdiction over the contract and takings claims that otherwise might be transferred to the claims court.

This resolution has much to recommend it, including avoiding the necessity of resolving the complicated question of whether the Contract Disputes Act commits the contractual claims to the exclusive jurisdiction of the claims court. It permits one court to resolve at one time all the claims that arise out of what is so obviously a common nucleus of operative facts. The claim based on the Pitney Bowes settlement is close enough to the other claims to warrant their resolution at the same time by the same court, which, by the way, is the same court in which the Pitney Bowes claims were litigated and settled.

**IV.     Failure to State a Claim**

Resolution of the question of jurisdiction does not resolve whether Plaintiffs' claims state claims for relief. I turn to that question now.

Courts should not dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This is the standard because "the issue presented by a motion to dismiss is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1086 (D.C.Cir.1998) (internal quotation marks omitted). The allegations

in the complaint are, of course, deemed to be true for the purpose of ascertaining whether they state a claim upon which relief can be granted. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). In Browning, the court of appeals stated:

> A Rule 12(b)(6) motion tests the legal sufficiency of a complaint: dismissal is inappropriate unless the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Reviewing de novo, we accept the plaintiff's factual allegations as true and construe the complaint "liberally," "grant[ing] plaintiff[] the benefit of all inferences that can be derived from the facts alleged." At the Rule 12(b)(6) stage, we do not assess "the truth of what is asserted or determin[e] whether a plaintiff has any evidence to back up what is in the complaint." As the Supreme Court reiterated in a case decided after the district court dismissed this case, Federal Rule of Civil Procedure 8 requires "simply [that] ... 'the defendant [give] fair notice of what the plaintiff's claim is and the grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."

Id. (internal citations omitted).

Furthermore, Judge Urbina found that the contract and takings claim asserted in the Pitney Bowes case, identical in all pertinent respects to the claims asserted in this case, survived the Postal Service's motion for summary judgment.

> From this, the court concludes that genuine issues of material fact remain. In this respect, the factual record requires further development to determine whether a contract existed between Pitney Bowes and the Postal Service over the authorization of the CMRS, and, if a contract did in fact exist, certain of its terms. Furthermore, while the parties have provided ample evidence of preliminary discussions leading up to the 1978 authorization of the CMRS, as well as memorializations of the authorization and documentation construing its implementation, they have left important questions unanswered concerning the context of these discussions and communications, the parties' intent and understanding,

> and the parties' course of conduct regarding the CMRS.
> Thus, the court concludes that summary judgment is not
> appropriate at this juncture. Consequently, the court denies
> the cross-motions for summary judgment.

Pitney Bowes, 27 F. Supp. 2d at 24.  He reached the identical conclusion as to the takings claim because its resolution was dependent on the resolution of the factual issues pertaining to the contract claim.

> Pitney Bowes alleges that its property interest in the
> advance deposits derived from the "thousands of existing
> contractual arrangements" between it and its customers. To
> establish a taking, however, Pitney Bowes must also show
> that it had a reasonable, investment-backed expectation in
> the property taken. That is, Pitney Bowes must demonstrate
> that it could expect the advance deposit process to continue
> and the interest generated thereby would attach to it. In
> other words, Pitney Bowes must first establish its alleged
> contractual rights. As discussed in detail above, genuine
> issues of material fact exist with respect to the existence of
> a contractual relationship. Accordingly, the court concludes
> that the factual record requires more development on the
> issue of Pitney Bowes's reasonable, investment-backed
> expectations. Accordingly, summary judgment would not
> be appropriate at this juncture on the Fifth Amendment
> takings claim. Consequently, the court denies the cross-
> motions for summary judgment.

Id. at 25 (internal citations omitted).

      While the standard for summary judgment is different, there is implicit in the denial of such a motion the finding that the party opposing the motion has stated a claim for relief.  It is impossible to conceive of a case in which a court could find that there was a genuine issue of material fact to preclude the award of judgment as a matter of law to the movant, and also find that the claim asserted was not one upon which relief could be granted.  Thus, in my view, this Court should conclude, as Judge Urbina did, that there

are factual issues that must be resolved as to the contract and takings claim before the court may act upon any motion seeking dismissal.

        1.        <u>The Quasi-Contract Claims</u>

Wile it does not appear from Judge Urbina's decision that Pitney Bowes asserted the quasi-contractual claims asserted here, those claims flow from the same disputed facts as the contract claims. Whether Plaintiffs were induced by promises made by the Postal Service to take certain action, and whether the course of dealings between Plaintiffs and the Postal Service warrant relief quantum meruit or to prevent an unjust enrichment, will all be resolved on the same set of facts.

The gravamen of Plaintiffs' quasi contractual claims is that, in reliance upon the promise of the Postal Service that they would be permitted to keep the interest on the advance payment accounts, Plaintiffs expended large amounts of money to make the CMRS an efficient system. Plaintiffs argue that, although the system relieved the Postal Service of having to maintain any advance payment system, the Postal Service nevertheless broke its promise by taking the interest on the advance payment accounts for itself and by failing to compensate Plaintiffs for all the time, effort, and money they spent to improve the system. Plaintiffs note that the Postal Service has benefited and will continue to benefit mightily from the system. Those factual allegations surely set forth claims upon which relief can be granted under the controlling legal principles pertaining to promissory estoppel, quantum meruit, and unjust enrichment. Restatement (Second) of Contracts § 90(1) (1979);[7] <u>AT&T Corp. v. Fed. Comm. Comm'n</u>, 349 F.3d 692, 697 n.40

---

[7] This section of the Restatement provides: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise. The remedy granted for breach may be limited as justice requires."

10

(D.C. Cir. 2003) ("Quantum Meruit is premised on the notion that a party receiving service would be unjustly enriched if it were not required to pay for that service."); Restatement (First) of Restitution § 1 (1937) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other.").[8]

  2.  The <u>Pitney Bowes</u> Settlement Claim

Obviously, Judge Urbina did not have to deal with whether the Postal Service settlement of the <u>Pitney Bowes</u> case violated the due process clause because the Postal Service did not settle with these Plaintiffs simultaneously.

The court of appeals has stated that the Equal Protection Clause, or "to be precise, the equal protection component of the Fifth Amendment's Due Process Clause, does not require that all persons everywhere be treated alike. Instead, it imposes the rather more modest requirement that government not treat similarly situated individuals differently without a rational basis." <u>Noble v. United States Parole Comm'n</u>, 194 F.3d 152, 154 (D.C. Cir. 1999) (internal citations omitted). It is equally clear that the court of appeals has indicated that, in assessing whether discrimination exists, the question of whether two persons were similarly situated is a question of fact. <u>George v. Leavitt</u>, 407 F.3d 405, 414-15 (D.C. Cir. 2005). I therefore conclude again that the existence of that question of fact—whether Pitney Bowes and Plaintiffs were similarly situated—precludes the granting of the Postal Service's motion.

  3.  The Third-Party Beneficiary Claim

In determining whether a complaint states a claim upon which relief can be granted, the court is not required to accept as true a legal conclusion couched as a factual

---

[8] Note that a benefit may include saving the other from expense or loss. Restatement (First) of Restitution § 1, comment b (1937).

11

allegation in the complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006). As plaintiff Ascom Hasler, Inc., concedes, a party can claim the status of a third-party beneficiary if a contract between other parties "reflects the express or implied intention of the parties to benefit the third party." Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss at 49 (quoting Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997)). While the intended third party to be benefited need not be named in the contract, he "must fall within a class clearly intended to be benefited thereby." Id.

The court of appeals in this Circuit has looked to section 302 of the Restatement of Contracts (Second) in ascertaining whether a party may claim third-party beneficiary status. See, e.g., Outlaw v. Airtech Air Conditioning & Heating, Inc., 412 F.3d 156, 164 (D.C. Cir. 2005); Sec. Exch. Comm'n v. Prudential Sec., Inc., 136 F.3d 153, 159 (D.C. Cir. 1998); Liberty Mutual Ins. Co. v. Travelers Indem. Co., 78 F.3d 639, 643 (D.C. Cir. 1996). That section of the Restatement provides:

> § 302. Intended And Incidental Beneficiaries
>
> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

As stated above, on September 19, 1978, Pitney Bowes and the Postal Service entered into a Statement of Understanding.[9] This SOU gave Pitney Bowes the right to operate the CMRS.  See Pitney Bowes, 27 F. Supp. 2d at 18.  But, the SOU does not mention Plaintiffs and, of equal significance, says nothing about the interest derived from the funds in the meter resetting companies' trustee banks. Clearly, even by the demanding standard governing dismissal for failure to state a claim, any claim that the Postal Service and Pitney Bowes intended Plaintiffs to benefit from the Pitney Bowes SOU has to be dismissed.

Since the SOU is silent as to the interest being earned and as to Pitney Bowes's competitors, it is impossible to read it as expressing the intention to benefit them by allowing Plaintiffs to keep that interest.  Nor does the performance of the mutual promises to each other made by Pitney Bowes and the Postal Service in the SOU satisfy any obligation that either of them had to pay money to those competitors.  I therefore recommend that Plaintiffs' complaints be dismissed for failing to state a claim upon which relief can be granted insofar as Plaintiffs claim they were the third-party beneficiaries of the SOU.  I make this recommendation only as to the SOU.  On the other hand, whether Plaintiffs can claim they are third-party beneficiaries as to the contract they claim came into existence as a result of their conduct and that of the Postal Service can only be determined once plaintiffs prove the existence of such a contract.

---

[9] This document is Exhibit C to Supplemented Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss.

13

**V.**     **Conclusion**

In conclusion, I hereby RECOMMEND Defendant's Motion to Dismiss in all consolidated cases be DENIED, except as to the third-party beneficiary claim based on the Statement of Understanding executed by the Postal Service and Pitney Bowes, which I RECOMMEND be GRANTED.

_____/s/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: March 6, 2007